UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61744-CIV-COHN/SELTZER

COLIN CAMPBELL,

      Plaintiff,

**SCANNED**

v.

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC.; STARWOOD
HOTELS & RESORTS MANAGEMENT
COMPANY, INC.; and WESTIN HOTEL
MANAGEMENT, L.P.,

      Defendants.

                                       /

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Defendants' Amended Motion to Dismiss Plaintiff's Amended Complaint [DE 36]. The Court has considered the Motion, Plaintiff's Response in Opposition [DE 40], Defendants' Reply [DE 44], and the record, and is otherwise fully advised in the premises.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arose out of personal injuries the Plaintiff, Colin Campbell, sustained on May 11, 2007 while swimming in the ocean off of Freeport, Grand Bahama Island, Bahamas. Plaintiff alleges that he was swimming within an area designated by the Defendants as safe for swimming and snorkeling and was struck by a motorboat operated by Ocean Motion, a Bahamian company that contracts with the Defendants to provide watersports to hotel guests. Plaintiff sustained serious injuries, was transported to Rand Memorial Hospital and stabilized, and was then transported by air ambulance

to Ryder Trauma Center in Miami, Florida.

Plaintiff initially filed suit against only Starwood Hotels & Resorts Worldwide, but later amended his complaint to include Starwood Hotels & Resorts Management Company, Inc., Westin Hotel Management, L.P., Sheraton International, Inc., and Sheraton Overseas Management Corp. According to the Affidavit of Dominic Smith of Starwood, Sheraton Overseas was the operator of the Sheraton Grand Bahama and Weston Hotel Management, L.P. ("WHMLP") was the operator of the Westin Grand Bahama, at the time of the incident, but neither entity operates the resorts at present. The Starwood Defendants appear to be the parent companies of WHMLP, and Sheraton International appears to be the parent company of Sheraton Overseas Management Corporation.

In his Amended Complaint, Plaintiff asserts a negligence claim against the Defendants, based on both their direct negligence, their failure to provide a safe swimming area or warn of a dangerous condition, and on their vicarious negligence for the negligent acts of their agent, Ocean Motion.

In the Amended Motion to Dismiss, the Sheraton Defendants moved for dismissal on the basis of lack of personal jurisdiction, and thereafter, the parties reached an agreement to voluntarily dismiss the Sheraton Defendants from the action. Thus, the Court considers only that portion of the Motion that requests dismissal of the remaining parties based on the doctrine of forum non conveniens.

## II.    APPLICABLE LEGAL STANDARDS AND ANALYSIS

The doctrine of forum non conveniens permits a District Court to decline to exercise its jurisdiction over a case when the convenience of the parties and the

2

interests of justice weigh in favor of trying the action in an alternative forum. Gulf Oil
Corp. v. Gilbert, 330 U.S. 501, 507 (1947). A party moving for dismissal based on the
doctrine of forum non conveniens must demonstrate that (1) an adequate alternative
forum is available, (2) the public and private factors weigh in favor of dismissal, and (3)
the plaintiff can reinstate his suit in the alternative forum without undue inconvenience
or prejudice. Leon v. Miller Air, 251 F.3d 1305, 1310-11 (11th Cir. 2001). "A defendant
has the burden of persuasion as to all elements of a forum non conveniens motion,
including the burden of demonstrating that an adequate alternative forum is available."
Id. at 1311.

## A.     Adequate Alternative Forum

Defendants must first establish that an adequate alternative forum exists, in this
case, the Bahamas. An alternative forum is "available" to the plaintiff where the foreign
court is able to assert jurisdiction over the litigation. Leon, 251 F.3d at 1311. A
defendant may generally demonstrate this by showing that it is 'amenable to process' in
the other jurisdiction. Republic of Panama v. BCCI Holdings, 119 F.3d 935, 951 (11th
Cir. 1997). An alternative forum is considered adequate if it offers at least some relief,
but it need not be a perfect forum. Leon, 251 F.3d at 1311. However, "extreme
amounts of partiality or inefficiency may render the alternative forum inadequate." Id. at
1311.

In the instant case, Plaintiff's only argument that the Bahamian court system is
not an adequate alternative forum is based on its assertion that only one of the
remaining Defendants in the case, WHMLP, is amenable to process in the Bahamas.
In their Motion, the Defendants argue that the Starwood Defendants are not proper

3

parties to the suit, because as parent corporations, they are separate entities not liable

for any torts committed by their subsidiary. However, they also agree in their Reply

that, for purposes of this case only, the Starwood Defendants agree to submit to the

jurisdiction of the Bahamian courts and waive any jurisdictional or venue defenses

available to them in the Bahamian courts and under Bahamian law. (Reply, DE 44], p.

2.) In light of this stipulation, and finding that no allegations of extreme partiality or

inefficiency have been made regarding the Bahamian court system, the Court

concludes that the Defendants have met their burden of proving that the Bahamian

courts are an adequate alternative forum for this suit.

### B.     Private Factors

The Court must next weigh the private interests of the case, looking to the

following factors: "the relative ease of access to sources of proof; availability of

compulsory process for attendance of unwilling, and the cost of obtaining attendance of

willing, witnesses; possibility of view of premises, if view would be appropriate to the

action; and all other practical problems that make trial of a case easy expeditious and

inexpensive." Gulf Oil, 330 U.S. at 508. In considering these factors, the Court must

weigh the relative advantages and disadvantages of each potential forum, not simply

considering the advantages or disadvantages of one or the other. La Seguridad v.

Transytur Line, 707 F.2d 1304, 1308 (11th Cir. 1983).

When considering the private factors, the Court must also give a strong

presumption in favor of the Plaintiff's initial forum choice. As the Supreme Court held in

Gulf Oil, "unless the balance is strongly in favor of the defendant, the plaintiff's choice

of forum should rarely be disturbed." 330 U.S. at 508. The Eleventh Circuit has further

4

explained that "in this Circuit we have long mandated that district courts 'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting La Seguridad, 707 F.2d at 1308 n.7)). The Court considers each of the Gulf Oil private interest factors in turn.

### 1)    Access to Evidence

The access to evidence available in the United States weighs in favor of the Plaintiff's selected forum, even in light of the fact that some evidence is located in the Bahamas. Defendants assert that discovery procedures are available in the Bahamas, and all proof necessary for Plaintiff's claim is accessible in the Bahamas. In contrast, Defendants argue, certain evidence would not be accessible to them if the case were tried in this Court. For example, Defendants argue that evidence regarding Plaintiff's medical treatment in the Bahamas, presumably medical records from the ambulance attendants and Rand Memorial Hospital, could not be obtained for trial here because the Court could not compel the Bahamian medical providers to produce this evidence or appear for deposition. However, as Plaintiff points out, these medical records represent a small fraction of the total records of his treatment, because the vast majority of his treatment took place in Florida. The Bahamian medical providers merely stabilized the Plaintiff so he could be transported to Florida for treatment. The records from Rand Memorial Hospital consist of a total of fifteen pages, and are already in the

5

possession of both the Plaintiff and the Defendants.[1]  In response, Defendants assert only that they "should not be forced to rely on Plaintiff to be the accurate gatekeeper for foreign records."  However, at no point do Defendants assert that the Bahamian medical providers have refused to speak with them or to provide any necessary evidence.  In fact, the Plaintiff's ability to request and receive the medical records with no apparent difficulty suggests that Rand Memorial Hospital has voluntarily cooperated with attempts to obtain this evidence.  Defendants merely assert that they will be forced to resort to letters rogatory to attempt to compel these witnesses to appear for deposition, without providing any basis for their belief that the medical providers will be uncooperative.  Without more, and considering the relatively small importance that this medical treatment appears to have in the overall case, the Court concludes that the fact that some limited evidence regarding medical treatment exists in the Bahamas does not weigh strongly in favor of the Defendants.

Furthermore, the Court must consider not only the possible advantages of the Bahamas forum, but also its disadvantages.  If this case were dismissed and refiled in the Bahamian courts, the Plaintiff would then confront obstacles obtaining depositions of his medical providers in Florida, without the subpoena power of a court in the state of Florida.  Considering that the overwhelming bulk of Plaintiff's medical treatment took place in the United States, the Court concludes that these burdens strongly outweigh any burden that the Defendants may have in obtaining Bahamian medical evidence if

---

[1]  Plaintiff states that he requested and received these records from Rand Memorial Hospital, and provided them to the Westin Defendants in his Rule 26 Disclosure. (Response, DE 40, p. 7.)

the case is heard in this Court.

Defendants also assert that if the case is heard in this Court, they will be unable to obtain evidence from Ocean Motion, the company that operated the motorboat that struck the Plaintiff. Defendants argue that because they would not be able to compel the depositions of the Ocean Motion owner and employees if the case were tried in Florida, they would be unable to obtain evidence regarding the purchase and placement of the buoys, the vessel itself, the hiring and qualifications of the employees, or the emergency procedures used for personal injuries. However, as discussed above, Defendants do not allege any actual difficulty whatsoever in obtaining these depositions and evidence. As they concede in their briefing, they could potentially use Bahamian legal processes, such as letters rogatory, to compel these witnesses to appear for deposition. Furthermore, the evidence demonstrates that there is, at a minimum, a business relationship between the hotels and Ocean Motion. Even if this contractual relationship does not give the Defendants the power to compel Ocean Motion to produce its employees for deposition, the business relationship does suggest, in the absence of any evidence to the alternative, that the Defendants would potentially have little difficulty obtaining what evidence they need from Ocean Motion. Again, without any actual allegations that the Defendants are being refused access to this evidence, the Court will not infer that trying this case in the Bahamas is the only possible way that this evidence could be obtained by the Defendants.

Furthermore, as discussed above, dismissal in favor of the Bahamian forum would have many similar disadvantages because of the inability to compel American witnesses to appear for deposition. The Ocean Motion witnesses are unarguably

important ones: they witnessed the accident firsthand, and provided the initial treatment to the Plaintiff. However, the eyewitnesses who were in the water at the time of the accident, and who live in the United States outside the jurisdiction of the Bahamian courts, are equally important witnesses. Thus, the fact that the Ocean Motion witnesses are located in the Bahamas, beyond this Court's subpoena power, does not weigh strongly in favor of dismissal when the dismissal of this case, and re-filing in the Bahamas, would result in the exact same problem with respect to the Plaintiff's eyewitnesses.

One new argument, raised in the Defendants' Reply for the first time, addresses the possible existence of a Bahamian police report regarding the accident. Defendants state that witness Sherial Pierre testified at her deposition that police investigated the incident, and speculate that the police report "likely contains crucial investigative findings as to the cause of this incident" and that they would be prejudiced without access to it. However, it does not appear that Defendants have made any effort to obtain a copy of the report or to even confirm, beyond the word of Ms. Pierre, that such a report exists. On such speculative arguments, and without any real showing of the existence or unavailability of this evidence, the Court finds that this argument does not weigh in favor of dismissal.

On balance, considering the availability of the evidence in this case, the Court finds that the "availability of evidence" factor weighs in favor of the United States forum. A significant portion of the evidence is located in the United States, as are a large number of the witnesses who must be deposed. Of the witnesses in the Bahamas, most have already given depositions in this matter. Defendants consistently point to

8

their inability to compel the Bahamian entities to produce the needed evidence in the Bahamas, but have not alleged any actual difficulty in obtaining this evidence. To the extent that Defendants rely on the hypothetical challenges they may face when trying to obtain this evidence in the Bahamas due to the inability of this Court to compel it, the Plaintiff would potentially suffer the same hypothetical challenges if forced to litigate in the Bahamas, where a Bahamian court would be unable to compel the production of evidence and witnesses located in the United States. Where evidence is distributed between two fora, there can be no perfect forum choice–the Court must simply balance the relative hardships that each forum would impose on the litigants. In this case, although the accident took place in the Bahamas, much of the relevant evidence is located in the United States, and a great deal more has already been obtained via the depositions of the hotel employees. Thus, the hardships associated with obtaining evidence while litigating in the Bahamian forum would be greater than the hardships associated with obtaining evidence while litigating in this forum, and the Court concludes that this factor weighs in favor of the United States forum.

### 2) *Availability of Witnesses*

The availability of witnesses to testify live at trial is a factor that undoubtedly weighs in favor of the Plaintiff's selected forum. Of the forty-eight potential witnesses in this case,[2] thirty-one are located in the United States, including the Plaintiff himself and five eyewitnesses who were in the water or on the beach at the time of the accident, as

---

[2] In his Response, the Plaintiff refers to a total of forty-six witnesses that were previously disclosed as potential witnesses. However, as Plaintiff notes, an additional two employees of the hotel were later disclosed, and are among the nine employees who have already been deposed.

9

well as virtually all of Plaintiff's treating physicians who can testify to his damages. Of the fifteen witnesses located in the Bahamas, nine employees of the hotel have already participated in videotaped depositions.[3] Defendants contend, however, that because they no longer operate the hotel, these employees are not within their control, and they cannot compel these employees to appear for trial in the United States. However, the fact that they have been able to obtain the depositions of these employees, apparently with little difficulty, seems to contradict that contention. Again, the fact that this Court would be unable to compel these witnesses to testify at trial does not necessarily mean that the Defendants would be unable to produce them. Furthermore, even if the Defendants were unable to obtain the attendance of these witnesses at trial in this Court, they would still have the opportunity to admit their testimony in the form of the video depositions that have already been taken. Defendants repeatedly cite to Gulf Oil for the proposition that being "forced to try their cases on deposition is to create a condition not satisfactory to court, jury or most litigants." 330 U.S. at 511. However, the Gulf Oil case was decided in 1947, when "trying a case on deposition" meant something very different from what it means today. The availability of technology such as video depositions is routinely used in courts today, and presents a much improved alternative when live testimony is not available. In light of this available option, and the fact that the video depositions of these witnesses have already been taken, the Court concludes that the possibility that these employees may not be able to be physically

---

[3] The witnesses who have already been deposed include Lester Fernander, Carrington McQueen, Sheriel Pierre, Jason Smith, Stephanie Wilson, George Strachan, Andrew Ferguson, Terrence Reid, and Cranston Rolle.

10

present to testify in court is not significantly prejudicial to the Defendants.

Defendants argue, and Plaintiff concedes, however, that the Ocean Motion employees are not directly within the control of the Defendants. Additionally, the three ambulance attendants and the physician who cared for the Plaintiff at Rand Memorial Hospital are located in the Bahamas and, thus, are outside the subpoena power of this Court. As discussed above, the Ocean Motion employees have a business relationship with the Defendants, which suggests that Defendants may have some ability to produce these witnesses for trial in the United States. Even if they were not able to do so, videotaped depositions of these witnesses could be taken in the Bahamas and used at trial. Similarly, videotaped depositions could be used to obtain the testimony of the medical professionals. Finally, the Court notes that in this case, neither forum will be perfect. Regardless of which forum is used, some witnesses will be beyond the subpoena power of the court that is adjudicating the case. The most important witnesses, including most of the eyewitnesses and the medical providers who provided the vast majority of the care to the Plaintiff, are either located in the United States or have already been deposed in the Bahamas. Thus, although the inability of this Court to compel the attendance of the Ocean Motion employees and Bahamian medical providers may weigh in favor of the Bahamian forum, the overwhelming number and importance of the witnesses whose testimony is available in the United States weighs much more strongly in favor of adjudicating the case in this Court.

In considering the availability of witnesses, the Court must also consider the cost and inconvenience of the witnesses' travel to the forum, even if they are able to attend. At most, Defendants can show that the cost and inconvenience would be the same for

11

either of the two possible fora. If the trial is held in the Bahamas, the thirty-one

witnesses located in the United States would have to travel to the Bahamas, and if the

trial is held in the United States, the seventeen witnesses located in the Bahamas

would have to travel to the United States. For practical purposes, however, this is a

distinction without difference. Grand Bahama Island is located a shorter distance from

the Southern District of Florida than are most parts of central and northern Florida.

Thus, this factor does not weigh strongly in favor of either forum.

### 3)      *Possibility to View Premises*

Defendants assert that the need for the trier of fact to view the premises where

the accident occurred weighs in favor of adjudication of the case in the Bahamas.

However, as Plaintiff points out, the accident occurred in the ocean off the beach where

the Westin resort is located, so any viewing of the actual precise accident scene is likely

to be difficult or impossible. Photographs are available that show the location of the

buoys at the time of the accident. Further, witnesses who were present on the day of

the accident would be able to testify to what they viewed. As Plaintiff argues,

modifications to the larger accident area, including warning signs that have been

erected on the beach, make an accurate viewing of the scene even more difficult, and

as a practical matter, since there is no right to a jury trial in a civil case in the Bahamas,

there is no compelling argument to be made here that a jury needs to view the scene.

Because the accident scene can be adequately described and presented to the jury

through photographs in this Court, just as it could be in a Bahamian court, this factor

does not weigh in favor of the Bahamian forum.

12

### 4) Any Other Practical Problems

Defendants argue first that their inability to implead Ocean Motion, the entity that they allege is responsible for the accident, will hamper their ability to present their case and will unduly burden them if they are forced to institute separate legal proceedings for indemnity and contribution in the Bahamas. The Defendants contend that the blame for the accident lies with Ocean Motion. The inability to implead Ocean Motion certainly does, to some degree, weigh in favor of dismissal. However, the inability to implead this third party is unlikely to actually hamper the Defendants' ability to defend itself in this case. Plaintiff alleges in this case that the Defendants are vicariously liable for the negligence of Ocean Motion, based on an agency relationship, and additionally, that Defendants are directly liable due to their failure to provide a safe swimming area or warn of the dangerous condition of the swimming area. With or without impleading Ocean Motion, Defendants can defend against the first claim by proving there was no agency relationship, and against the second claim by proving they were not, themselves, negligent. Any direct liability to the Plaintiff for failure to provide a safe swimming area or warn about the dangerous condition is in no way related to whether or not Ocean Motion was negligent. However, Defendants do assert that it will be burdensome and inconvenient to assert a second action in the Bahamas against Ocean Motion. Because of this burden, and the fact that it is generally preferable to litigate all claims related to a single incident in a single case, the inability to implead Ocean Motion does weigh in favor of the Bahamian forum, but it is not dispositive.

On the other hand, Plaintiff argues that significant financial considerations weigh against the choice of the Bahamian courts as a proper forum for this case. Specifically,

13

Plaintiff points to the high costs of litigation in the Bahamas, including the inability of

litigants to enter into a contingency fee arrangement, as likely barriers to re-filing the

case in the Bahamas. The Eleventh Circuit has held that this argument is "particularly

weak in regard to contingency fees," and that an alternative forum's ban against

contingency fees "should not significantly influence the forum non conveniens

determination." Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1430 (11th Cir.

1996). Thus, although this factor does weigh somewhat in favor of the United States

forum, it too cannot be given any significant or dispositive weight in the analysis.

### 5)   *Balancing the Private Interest Factors*

Weighing all the factors, and considering the strong presumption that this Court

must give to the Plaintiff's selected forum, the Court concludes that the private factors

weigh in favor of retaining jurisdiction in this forum. At most, Defendants have shown

that they will have difficulty obtaining evidence from, and producing at trial, the Ocean

Motion employees and Bahamian medical providers, and that the inability to implead

Ocean Motion will create inconvenience and be a burden on them. However, even

giving significant weight to these factors, they simply do not outweigh the presumption

in favor of the Plaintiff's chosen form, especially considering the strong considerations

that support maintaining this case in the current forum. The majority of the witnesses

are located in the United States, including the Plaintiff himself, nearly all the medical

providers, and several of the eyewitnesses, and nine more of the Bahamian witnesses

have already been deposed, and thus, their testimony can be introduced at trial in this

forum. At most, Defendants can show that the private factors are in or near equipoise,

because trial in either forum would be equally inconvenient. For every witness or piece

14

of evidence that the Defendants assert is located in the Bahamas, and thus, cannot be
compelled by this Court, there is at least another witness or piece of evidence in the
United States that could not be compelled by a Bahamian court. "If any presumption
exists in favor of the plaintiffs' choice (never mind a presumption requiring 'positive
evidence of unusually extreme circumstances' before upsetting the plaintiffs' choice),
then by definition the plaintiffs' choice must win if all other factors are equal." SME
Racks, 382 F.3d at 1103 (quoting Gulf Oil, 330 U.S. at 508). On balance, considering
all the factors, the Court concludes that the private factors, considering the presumption
in favor of the Plaintiff's chosen forum, weigh strongly in favor of retaining jurisdiction
over the case in this Court.

### C.    Public Factors

Although the Court concludes that the private factors weigh in favor of retaining
jurisdiction, and are not in equipoise, the Court will also consider the public factors.
See Leon, 251 F.3d at 1311 (stating that "even though the private factors are 'generally
considered more important' than the public factors, the better rule is to consider both
factors in all cases"). These factors include "court congestion and jury duty generated
from controversies having no relation to the forum; the desirability of having localized
controversies decided at home; and the difficulties attendant resolving conflict-of-laws
problems and applying foreign law." La Seguridad, 707 F.2d at 1307.

First, the Court notes that it cannot be said that this case has no relationship to
the instant forum. Although the accident took place in the Bahamas, the Plaintiff is a
United States citizen living in the state of Florida, and "'[t]here is a strong federal
interest in making sure that plaintiffs who are United States citizens generally get to

15

choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction.'" SME Racks, 382 F.3d at 1104 (quoting Elsfeld v. Costa Crociere, S.p.A., 289 F.3d 1300, 1311 (11th Cir. 2002)). The interests of the Bahamian courts in this matter, however, relate only to the fact the accident took place there.[4] The Defendants are international corporations who are susceptible to jurisdiction in both the Bahamas and the United States,[5] and the Plaintiff is a United States citizen who was simply on vacation in the Bahamas when the accident occurred. This case cannot be said to be a "localized controversy" with these facts. Thus, the Court concludes that there is a strong federal interest in providing this Plaintiff with a forum in the United States, and that this interest is at least equal to, and probably outweighs, any interest that the Bahamian courts may have in adjudicating a dispute between these international corporate Defendants and an American citizen. The Court also notes that the fact that the Southern District of Florida has one of the busiest dockets in the United States is entitled to little or no weight in the analysis. See Morse v. Sun Intern. Hotels, Ltd., 2001 WL 34874967, *6 (S.D. Fla. 2001).

---

[4] In a similar case, another court in this District concluded that the regulation of watersports safety is important to the Bahamian tourism industry, and that this localized interest outweighed Florida's interest in the litigation, which was based on the residency of the plaintiff and the fact that the Bahamian resort where the accident occurred derived 14% of its business from the state of Florida. See Morse v. Sun Intern. Hotels, Ltd., 2001 WL 34874967, *7 (S.D. Fla. 2001). However, that case considered only the state of Florida's interest in the litigation, rather than considering the compelling federal interests emphasized more strongly in SME Racks.

[5] In fact, based on the representations made by the parties, the Starwood Defendants may not even be susceptible to the jurisdiction of the Bahamian courts, and would have to specifically consent to jurisdiction in the Bahamian courts before this case could be re-filed there.

Finally, although it appears to be undisputed that Bahamian law would apply in this case, this factor is not dispositive. Even assuming that Bahamian law applies, federal courts are often called upon to decide issues of foreign law. Haddad v. RAV Bahamas, Ltd., 2008 WL 1017743, *8 (S.D. Fla. 2008) (*citing* Sun Trust Bank v. Sun Intern. Hotels, Ltd., 184 F. Supp. 2d 1246, 1254 (S.D. Fla. 2001)). When considering Bahamian law, there are no language barriers to the Court's understanding of this body of law, and furthermore, Bahamian law is derived from English common law and has many similarities to United States law. Id. (*citing* Reid-Walen v. Hansen, 933 F.2d 1390, 1397-98 (8th Cir. 1991)). Thus, the Court concludes that this factor does not weigh strongly in favor of dismissal.

## III.   CONCLUSION

Although the Bahamian courts do provide an adequate alternative forum for this case, the Court concludes that the Defendants have not met their burden of demonstrating that the private interest and public interests factors weigh in favor of dismissal. The private interest factors, including availability of witnesses and evidence, are, if anything, in equipoise, and taking into consideration the strong presumption in favor of the Plaintiff's chosen forum, do not weigh in favor of dismissal. Similarly, the public interest factors, including the strong federal interest in providing American citizens with a forum for their suits, weigh in favor of retaining jurisdiction over this case. Defendants have proven no "unusually extreme circumstances" or manifest "material injustice" that would warrant dismissal. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Amended Motion to Dismiss

17

Plaintiff's Amended Complaint [DE 36] is **DENIED**.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 22ⁿᵈ day of July, 2008.

                                **JAMES I. COHN**
                                **United States District Judge**

Copies provided to:

Counsel of record

18