UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61744-CIV-COHN/SELTZER

COLIN CAMPBELL,

    Plaintiff,

v.

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., et al.,

    Defendants.
_____/



## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on a Motion for Summary Judgment [DE 53] ("Motion" or "Mot.") filed on August 22, 2008 by Defendants Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), Starwood Hotels and Resorts Management Company, Inc. ("Starwood Management") and Westin Hotel Management, LP ("WHMLP"). Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment [DE 59] ("Opposition" or "Opp.") on September 18, 2008 and Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgement [DE 66] ("Reply") was filed on October 3, 2008. The Court has considered the Motion, Opposition, Reply, and the record in this case, and is fully advised in the premises.

### I. BACKGROUND

This case arises out of personal injuries the Plaintiff, Colin Campbell, sustained on May 11, 2007 while swimming in the ocean in front of the Westin Grand Bahama resort ("Grand Bahama"). Opp. at 3. Plaintiff was struck by a motorboat operated by

Ocean Motion, Ltd. ("Ocean Motion"). Id. Ocean Motion provides water sports and beachfront activities to the guests of the Grand Bahama and guests may reserve "all-inclusive" packages that include Ocean Motion services and amenities. Id. Ocean Motion services are not restricted to guests of the Grand Bahama and are also offered to the general public. Mot. at 4. Ocean Motion is not a party to this action.

The Grand Bahama has established policies and procedures regarding "Pool & Beach Water Safety" that direct lifeguards to, among other things, (1) "caution swimmers regarding unsafe areas," (2) "[m]inimize accidents, by working in tandem with water sports contracted service providers," and (3) to instruct any "persons found swimming outside of the designated swim zone . . . to return." Exhibit ("Ex.") 7 to Opp. at 1-2.

There is conflicting testimony regarding whether the lifeguards warned the Plaintiff before he was struck. A witness testified that prior to being struck, Plaintiff was in the water past the buoys and no lifeguard issued any warnings. Ex. 8 to Opp. at 16:7-25. Whereas there is testimony from two separate lifeguards that they attempted to warn Plaintiff to return inside the buoys. Ex. G to Mot. at 13:16-25, 20: 17-23, 31:16-32:16 (Deposition of Carrington McQueen); id. at 13:1-7 (Deposition of Terrence Reid). The manager of the pool and beach area of the Grand Bahama, Valentine Munnings, testified that there were signs advising swimmers not to swim past the buoys prior to the incident, however, they were washed away. See Ex. 3 to Opp. at 9:11-12; 19:1-8. At the time of the incident, a witness testified that he did not see any warning signs indicating that swimmers were not to swim past the buoys. Ex. 9 to Opp. at 29:22-25. Mr. Munnings testified that after the incident, signs stating "[d]o not swim past the

2

buoys" were put up.  See Ex. 3 to Opp. at 20:22-21:1.  Munnings further testified that lifeguards would wave swimmers back in if they swam past the buoys and if the swimmer did not respond, a water sports activity provider would be contacted for assistance.  See id. at 25:4-26:11.

Plaintiff was not a registered guest of the Grand Bahama.  Id. at 4.  Plaintiff did not purchase any goods or services from the Grand Bahama or Ocean Motion.  Id.  Rather Plaintiff was a passenger on the Discovery Cruise Line.  Opp. at 3.  Discovery Cruise Line passengers arrive at the port directly across from the Grand Bahama and are routinely transported to the resort, which offers amenities including beach and water sports activities to guests and visitors.  Id.

In his Amended Complaint, Plaintiff asserts a negligence claim against the Defendants, based on both their direct negligence, their failure to provide a safe swimming area or warn of a dangerous condition, and on their vicarious negligence for the negligent acts of their alleged agent, Ocean Motion.

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### III. ANALYSIS

The issues presented on Defendants' Motion are as follows: (1) what is the jurisdictional basis for and what law applies to the claims alleged in the Amended Complaint; (2) whether Defendants breached a duty to Plaintiff to provide a safe

swimming area or to warn of a dangerous condition; and (3) whether Defendants may be held liable for the actions of Ocean Motion on an agency theory.

1.  **Jurisdiction**

Defendants argue that Bahamian law applies in this case. Mot. at 5-6. Plaintiff maintains United States maritime law applies. Opp. At 5-9. At the heart of this dispute is whether Plaintiff may invoke this Court's admiralty jurisdiction. Admiralty jurisdiction attaches where the elements of the "navigable waters" locality test and the "significant relationship to traditional maritime activity" nexus test are met. Executive Jet Aviation Inc., v. Cities of Cleveland, Ohio, 409 U.S. 249, 258-61, 93 S.Ct. 493 (1972) (A "purely mechanical application of the locality test" alone does not suffice as a predicate for admiralty jurisdiction); Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 348 (11th Cir. 1994).

Under the locality test, if a tort occurs on navigable waters, the action is usually within admiralty jurisdiction. Executive Jet, 409 U.S. at 253. Defendants argue that this test is limited to the "navigable waters on the United States and the 'high seas,' but does not extend into territorial waters of other nations." Reply at 3. Defendants rely on a statement from Victory Carriers, Inc. v. Law, 404 U.S. 202, 205, 92 S.Ct. 418 (1971), that reads: "maritime law governs only those torts occurring on the [high seas and the] navigable waters of the United States." Defendants cite several courts that have used this statement to conclude that federal maritime law does not extend to torts that occur in territorial waters of other nations. See St. Pierre v. Maingot, No. Civ.A.01-2281, 2002 WL 31655355, *3 n.8 (E.D. La. Nov. 21, 2002); Dunham v. Hotelera Canco S.A. de C.V., 933 F.Supp. 543, 547 (E.D. Va. 1996) (denying admiralty jurisdiction over tort where injury occurred in territorial waters of Mexico); Sharma v. Skaarup Ship

5

Management Corp., 699 F.Supp. 440, 448 (S.D.N.Y. 1988) (denying admiralty jurisdiction where injury occurred in territorial waters of British Columbia). However, the majority of courts that have addressed the issue have determined that no such restriction applies. See Malaysia Intern. Shipping Corp. v. Sinochem Intern. Co. Ltd., 436 F.3d 349, 355 n.11 (3rd Cir. 2006) (finding admiralty jurisdiction over tort that occurred in Chinese waters and noting that "a tort need not have occurred in waters under the jurisdiction of the United States for us to exercise admiralty jurisdiction") (reversed on other grounds); Exter Shipping Ltd. v. Kilakos, 310 F.Supp. 2d 1301, 1310-11 (N.D. Ga. 2004) (exercising admiralty jurisdiction where ships were seized in Singapore and the United Kingdom); Szollosy v. Hyatt Corp., 208 F.Supp. 2d 205, 211 n.4 (D. Conn.2002) (exercising admiralty jurisdiction over accident in Cayman Islands waters); Afflerbach v. Cunard Line, Ltd., 14 F.Supp. 2d 1260, 1263 n.1 (D. Wyo.1998) (assuming admiralty jurisdiction over passenger disembarkation injury at Cayman Islands). The Court agrees with these latter cases that hold that the statement in Victory Carriers on which Defendants and the cases they cite rely upon is mere dicta because Victory Carriers concerned a tort that occurred in United States waters and the case never addressed this issue. The conclusion that admiralty jurisdiction applies to cases which arise on navigable waters outside of the United States is also echoed in prominent treatises. See, e.g., Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty 33 (2d ed. 1975) ("Occurrences on foreign navigable waters may also ground admiralty jurisdiction."). The instant case arises out of the Plaintiff being struck by a vessel in navigable waters. Therefore, the Court finds that the locality test has been satisfied.

6

In applying the nexus test, two queries are involved: (1) does the incident have a "potentially disruptive impact on maritime commerce?" and (2) does a "substantial relationship" exist "between the activity giving rise to the incident and traditional maritime activity?" Sisson v. Ruby, 497 U.S. 358, 364, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). As to the first query, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." Id. at 363, 110 S.Ct. 2892. Here, the owner of the vessel that struck the Plaintiff is not a party. Therefore, as to Plaintiff's first claim of Defendants' direct negligence, the activity giving rise to the incident centers on the scope of the duty Defendants owed to Plaintiff and thus has a substantial relationship on the hotel industry rather than traditional maritime activity. The steps that a hotel must take to warn swimmers of a potentially dangerous condition has little impact on maritime commerce. Plaintiff's second claim of vicarious liability based on the theory that the boat owner is an agent of Defendants, is a much closer call. However, as discussed below, the admiralty cases Plaintiff cites are inapposite to the issues in this case and Plaintiff has not set forth any evidence to demonstrate the Defendants exercised any control over the operation of the boat that struck Plaintiff. Accordingly, the Court holds that admiralty jurisdiction is not found in this case.

The Court determines that it has jurisdiction over this action on the basis of diversity jurisdiction. See 28 U.S.C. § 1332. The requirements for diversity action are satisfied here as (1) Plaintiff is a citizen of Florida, Amended Complaint [DE 8] ¶ 1, (2) Defendants are citizens of Maryland, New York and Delaware, Answer [DE 50] ¶¶ 2-4,

and (3) Plaintiff has alleged damages exceeding $75,000, Amended Complaint [DE 8] ¶ 12.

## 2. Applicable Law

A federal court sitting in diversity applies the conflict-of-laws rules of the forum state. Grupo Televisa, S.A. v. Telemundo Communications Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). Florida resolves conflict-of-laws questions in tort actions according to the "most significant relationship" test outlined in sections 145 and 146 of the Restatement (Second) of Conflict of Laws. Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980). Section 145 of the Restatement (Second) of Conflict of Laws provides in pertinent part:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.

Based on the above factors, the Court determines that Bahamian law applies to the claims raised in this action. Often under Florida law, the location where an incident occurs is the "decisive consideration" in the determination of the applicable law. See Murphy v. Thorton, 746 So. 2d 575, 576 (Fla. 1st DCA 1999). In this case, three of the

four factors listed in Section 145(2) weigh in favor of the application of Bahamian law as the Bahamas is the place where (1) the injury occurred, (2) the conduct causing the injury occurred, and (3) the relationship between Plaintiff and Defendants is centered. In addition, it would be an unacceptable burden if Defendants had to comply with the tort law of every country from which its guests or its visitors came. See Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 845 (7th Cir. 1999).

### 3.   Breach of Duty

As set forth in the Affidavit of Randol Dorsett ("Dorsett Aff."), Bahamian common law provides that persons who enter land occupied by another can be considered invitees, licensees or trespassers. Dorsett Aff. ¶ 3. Which category the person falls in will determine the duty of care owed by the land occupier. Defendants argue that, under Bahamian law, Plaintiff is a licensee with respect to the Grand Bahama. Mot. at 7. In opposition, Plaintiff argues that he is an invitee. In order to be classified as an invitee, the occupier must have a material interest in the purpose of the visit. Id. (citing Indermaur v. Dames, 1C.P. 274). A licensee is a person that enters the occupier's land with merely the occupier's permission. Id. (citing Fairman v. Perpetual Investment Building Society, [1923] A.C. 74).

Defendants stress the facts that Plaintiff was not a guest at the Grand Bahama, did not purchase any goods or services from Defendants, and did not speak with anyone at the Grand Bahama. Mot. at 7. Further, Plaintiff was not charged for use of Grand Bahama's swimming area. Id. at 4. Plaintiff counters that "Defendants had a material interest in all tourist visitors to its property." Opp. at 12. Plaintiff argues that

9

Defendants actively solicited tourists such as Plaintiff to visit the premises in order to entice them to use Grand Bahama's food and beverage, entertainment and recreational facilities. Id. 12-13. Plaintiff points out that "Defendants even have a special boardwalk and shopping area to both lure and keep visitors on the premises and spending money." Id. at 13.

Here, the Court finds that Plaintiff was a licensee because at the time he was injured, he was not engaging in an activity in which Defendants had a material interest. Plaintiff did not rent his snorkel gear or hire a guide from the Grand Bahama. It might be a different outcome if Plaintiff was injured when he was on the "special boardwalk" shopping or dining at one of the facilities at the Grand Bahama. However, under the circumstances of this case, where the Defendants did not have a material interest in Plaintiff swimming in front of the resort, the Court finds that Plaintiff was a licensee of the Grand Bahama.

Under Bahamian law, the duty owed to a licensee is to warn him of any concealed danger or trap of which the occupier actually knew. Dorsett Aff. ¶ 4. The Court finds that there are two related questions that cannot be determined at summary judgment. First, was the possibility of being struck by a boat beyond the buoys a "concealed danger or trap?" In other words, whether Plaintiff actually knew of this danger or whether a reasonable person would know, or in the exercise of due care should have known, of such a danger. Second, assuming the existence a concealed danger, the question then turns to whether Defendants adequately satisfied their duty to warn of this danger. Given the lack of warning signs at the time of the incident and the

conflicting evidence regarding whether the lifeguards warned the Plaintiff, this question is a disputed issue of material fact.

Defendants argue that "once Plaintiff entered open ocean, he left the Westin Grand Bahama's premises" and, thus, "any duties the Defendants owed to Plaintiff ended at that time."   Mot. at 9.  As support for this statement, Defendants rely on a general statement of Bahamian law to this effect contained in Mr. Dorsett's Affidavit. However, Mr. Dorsett does not provide any citation to support the claim that this statement applies to the specific circumstances of this case.  Indeed, several courts in the United States echo this general statement, but they also discuss an exception called the "sphere of control" test.  Fabend v. Rosewood Hotels and Resorts, L.L.C., 381 F.3d 152, 156 (3rd Cir. 2004).

Under the "sphere of control" test, an innkeeper must take protective measures to reduce the risk of injury on property adjacent to his premises where the innkeeper possesses or exercises sufficient control over such property.  Id.  In order to determine whether sufficient control exists, the Court should examine who is responsible for the safety of guests, who has the authority to dictate who may use the property, and whether the guests were invited by the property owners to use the adjacent land.  Id.; see also Pacheco v. United States, 220 F.3d 1126, 1131-32 (9th Cir. 2000); Breaux v. City of Miami Beach, 899 S0.2d 1059, 1065 (Fla. 2005).  Significantly, a beach may be under a hotel's "sphere of control" if the hotel had the legal right to control the conditions and use of the area, or possessed the area and evidenced an intent to control it even absent clear legal authority.  Fabend, 381 F.3d at 157.  In this case, the

11

Grand Bahama expressed an intent to control the swimming area by promulgating regulations concerning the area, installing buoys to mark the area, employing lifeguards, and installing warning signs before and after the incident.

### 4.   Agency

Plaintiff argues that admiralty law, which embraces the principles of agency, should govern the issue of whether Ocean Motion was the Defendants' agent such that Defendants may be held vicariously liable for Ocean Motion's actions. Opp. at 16-17. The cases that Plaintiff cites deal with whether individuals providing services on a ship, such as a concessionaire or a doctor, can be classified as agents of the ship owner so as to establish vicarious liability. See id. at 16 (citing Doonan v. Carnival Corp., 404 F. Supp. 2d 1367 (11th Cir. 2005); Archer v. Trans/American Services, Ltd., 834 F.2d 1570 (11th Cir. 1988). These cases have no application to the issues presented in this action where Defendants did not own or control the boat operated by Ocean Motion.

Plaintiff sets forth facts that establish a financial connection between Defendants and Ocean Motion including "all-inclusive" packages and advertising. See Opp. 16-17. Plaintiff also presents facts that establish that Defendants have limited control over Ocean Motion with respect to accounting procedures and the appearance and operating parameters of the two Ocean Motion booths, which are owned by Defendants. Id. But the dispositve issue is that there are no facts that would allow a reasonable jury to conclude that Defendants have control over Ocean Motion's operation of watercraft. Indeed, Plaintiff even acknowledges that "the contract states the Defendants' will not control Ocean Motion's operations." Id. Plaintiff alleges that

12

Defendants should be held liable for the negligent operation of Ocean Motion vessels, however, Plaintiff has failed to present sufficient facts to demonstrate that Defendants exercised a degree of control over that operation that would allow for vicarious liability in this case.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 22] is **GRANTED** with respect to Plaintiff's claim of vicarious liability.

2. Defendants' Motion for Summary Judgment [DE 22] is **DENIED** with respect to Plaintiff's claim of direct negligence based on Defendants breach of duty.

3. Bahamian law shall apply to Plaintiff's claim of direct negligence.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of October, 2008.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record